UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHERRY A. STALEY,<br><br>        Plaintiff,<br><br>   v.<br><br>KENNETH S. APFEL, Commissioner of Social Security Administration,<br><br>        Defendant. | CASE NO.   C05-5582FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for April 7, 2006 |

     This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  This matter has been fully briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's decision.

INTRODUCTION

     Plaintiff, Sherry Staley, was born in 1974, and she was 30 years old at the time of administrative law judge ("ALJ") issued her decision in this matter.  Plaintiff graduated from high school (attending special education classes)  and has worked in the past as a cashier, a courtesy clerk, a restaurant crew trainer, a merchandising specialist, and a respit care provider or companion.  According to her application, plaintiff claims she has been unable to work since November 1, 2002, due to problems with her deformity of the feet, learning disability, deformity of the low back, hearing loss, asthma, depression, and

REPORT AND RECOMMENDATION
Page - 1

1  fibromyalgia.

2       On August 16, 2002, Ms. Staley filed an application for Disability Insurance Benefits
3  and Supplemental Security Income. This application was denied initially, and she timely requested a
4  hearing. The administrative hearing was held on December 28, 2004, before ALJ Marguerite
5  Schellentrager. Following the hearing, the ALJ authored a decision denying claimant's applications on
6  February 9, 2005 (Tr. 11-24). Claimant sought review by the Appeals Council, and on July 8, 2005, the
7  Appeals Council denied plaintiff's request for review.

8       Plaintiff now brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as
9  amended, 42 U.S.C. § 405(g), to obtain judicial review of the administration's final decision denying
10 plaintiff's application for benefits. Specifically, plaintiff contends the ALJ erred when she assessed
11 plaintiff's residual functional capacity ("RFC"). Defendant counter-argues that the ALJ applied the proper
12 legal standards and her findings are properly supported by substantial evidence in the record.

13 DISCUSSION

14      This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper
15 legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman
16 v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a
17 reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389,
18 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a
19 preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772
20 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the
21 Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

22      As noted above the sole issue presented in this matter is whether or not the ALJ's residual
23 functional capacity assessment is properly supported by the medical evidence. "[R]esidual functional
24 capacity" is "the maximum degree to which the individual retains the capacity for sustained performance of
25 the physical- mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis
26 added). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate
27 the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further
28 specify: "When we assess your physical abilities, we first assess the nature and extent of your physical

REPORT AND RECOMMENDATION
Page - 2

limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b).

Here, the ALJ found that Ms. Staley has "the residual functional capacity: to lift 10 to 20 pounds at a time and sit for two to three hours at a time. She is limited in reaching overhead bilaterally, but otherwise has no limitations in handling, feeling, grasping, or fingering. She has no difficulty with supervisors or co-workers but should have no more than frequent contact (30 percent of the day) with the public" (Tr. 23-24). Based on this RFC, the ALJ, with the help of a vocational expert, concluded Ms. Staley would be able to perform sedentary work and that Ms. Staley would be able to return to her past work as a companion, as she performed it (Tr. 23).

Plaintiff does not challenge the physical or exertional limitations assessed by the ALJ. However, Plaintiff takes issue with the non-exertional or mental limitations imposed, arguing that the ALJ's assessment does not include the more restrictive limitations assigned by Dr. Eather, on whom the ALJ relied to form her opinion. Specifically, Plaintiff argues the ALJ relied on Dr. Eather's mental capacity assessment, but that Dr. Eather's opined that "claimant is capable of performing simple tasks of 1-3 steps. She can perform some complex tasks, but depression will interfere with frequent complex work" (Tr. 345), and the ALJ's assessment does not reflect this more restrictive limitation.

After carefully reviewing the record, paying particular attention to the reports of Dr. Eather and the ALJ's analysis of the medical evidence regarding Ms. Staley's mental limitations, the court finds no error in the ALJ's analysis of plaintiff's mental limitations, as reflected in her assessment of Plaintiff's RFC. The ALJ addressed the issue of Plaintiff's depression and the opinion of Dr. Eather by stating:

> The claimant also complains that she has had depressive symptoms all her life. She began counseling and taking Zoloft in 2001. In October of 2002, she presented to Community Health Care for mental health treatment. She complained of depressed mood, weight gain (of 30 pounds in the preceding six months), and anhedonia. The evaluator diagnosed major depressive disorder, changed her to Prozac, and recommended increased exercise. Ex 10F/3. The next month the claimant reported that she felt better with that change. The doctor noted that the claimant's affect was brighter. Ex 10F/2. It appears that the claimant did not return to this provider.
>
> On January 24, 2003, the claimant underwent a psychiatric disability examination with Christina H. Rasmussen, Ph.D., in connection with her disability claim. The claimant state that she felt "sadness" most of the time and reported a history of suicide attempts, explaining that she had superficially cut her wrists several times since the age of 18. Ex 12F/1. The last attempt had been approximately one year before. Ex. 12F/1-2. She denied any current suicidal or homicidal ideation or hallucinations. The claimant complained of sleep and appetite disturbances and said that she cried more often than usual. Ex. 12F/1-2.

> The doctor noted that the claimant's affect was normal. Ex 12F/2. Dr. Rasmussen diagnosed early onset dysthymic disorder and borderline personality disorder and assessed a global assessment of functioning (GAF) score of 65. Ex 12F/5. This score indicates that the claimant had some mild symptoms or some difficulty in social, occupational, or school functioning, but was generally functioning pretty well, with some meaningful interpersonal relationships. *See The Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th ed. 1994).
>
> On February 24, 2003, a state agency psychological consultant with DDS reviewed the record according to the psychiatric review technique. This doctor concluded that the claimant's affective disorder caused only mild restrictions in her activities of daily living; mild limitations in her social functioning; moderate limitations in her concentration, persistence, and pace; and had caused no episodes of decompensation. Ex 13F/11
>
> That same day, the consulting psychologist assessed the claimant's mental residual functional capacity. The doctor concluded that the claimant could perform simple, repetitive tasks of one to three steps, as well as some complex work, although depression would interfere with the frequent performance of complex work. The doctor stated that the claimant would be able to complete a normal, 40 hour workweek, with breaks every two hours, as evidenced by her good work history and ability to complete household tasks within her physical capabilities. The consultant opined that the claimant would be able to interact with supervisors and co-workers, but should only have brief, superficial contact with the public, due to her depression. He found no limitations in the claimants's ability to adapt to the workplace. Ex 14F/3.
>
> From February of 2003, through at least September of 2004, treating with psychiatrist Jessy Ang, M.D. See generally Ex 18F. Dr. Ang initially diagnosed bipolar disorder and changed the claimant's antidepressant. Ex. 18F/6. By April of 2003, the claimant reported feeling less depressed and that her sleep had improved. See Ex. 18F/8. Dr. Ang noted in February of 2004 that the claimant was doing better. Ex 18F/13.
>
> I find that the claimant's depressive symptoms are not as severe as she claims, but indeed cause some difficulty with stress, which worsens her level of depression. Therefore, the claimant should avoid work tasks involving frequent contact (more than 30% of the time) with the public.

(Tr. 18).

After reviewing the record, this court is not persuaded by plaintiff's argument. The record reflects that the ALJ reasonably evaluated Ms. Staley's RFC, in light of Dr. Eather's opinion and the other medical evidence related to her depression. The ALJ then properly relied on the Vocational Expert to find that Ms. Staley is not disabled, since she is capable of working as a companion, as she previously performed that at a sedentary level.

## CONCLUSION

The ALJ's decision is supported by substantial evidence in the record. Therefore, the Court should AFFIRM the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written

objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 7, 2006**, as noted in the caption.

      DATED this 14th day of March, 2006.

                                        */s/ J. Kelley Arnold*
                                        J. Kelley Arnold
                                        U.S. Magistrate Judge